UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
CASE NO. 1:26-CV-7443

YUE WEN CHEN,

Plaintiff,

v.

JPMORGAN CHASE BANK, N.A.,

Defendant.
_______________________________/

**COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff YUE WEN CHEN ("Plaintiff" or "Mr. Chen"), by and through his undersigned counsel, as and for his Complaint against Defendant JPMORGAN CHASE BANK, N.A. ("Defendant" or "Chase"), alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"), seeking redress for unlawful employment discrimination based on race, ethnicity, and national origin, as well as unlawful retaliation.
2. Plaintiff, a high-performing Asian employee, was wrongfully terminated by Defendant under the pretext of "Product Value Credit ('PVC') manipulation." In reality, Plaintiff followed express client instructions, obtained real-time authorization from his supervisor, and derived no financial or operational benefit from the transaction.

3. Defendant treated Plaintiff disparately compared to similarly situated non-Asian employees in the same market who committed far more severe infractions but were not terminated. Furthermore, when Plaintiff opposed the unfair, disparate treatment and procedural irregularities, Defendant swiftly retaliated by terminating his employment.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, Title VII (42 U.S.C. § 2000e-5(f)(3)), and 42 U.S.C. § 1981.
5. This Court has supplemental jurisdiction over Plaintiff's state and local law claims pursuant to 28 U.S.C. § 1367(a) because they form part of the same case or controversy.
6. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the events giving rise to the claims occurred within this Judicial District, and Defendant maintains regular business offices and conducts substantial business in this District.
7. This Court has jurisdiction as the action for damages are in excess of One Million Dollars ($1,000,000.00), exclusive of interest, costs, fees, and injunctive relief.

**PARTIES**

8. Plaintiff Yue Wen Chen is an Asian male of Chinese national origin who resides in the State of New York. At all relevant times, Plaintiff was an employee of Defendant working in New York, New York.
9. Defendant JPMorgan Chase Bank, N.A. is a national banking association with its principal place of business in Columbus, Ohio, regularly conducting business and operating branch

locations throughout the City and State of New York, including the Chrysler Branch located in New York, NY.

## FACTUAL ALLEGATIONS

10. On or about June 12, 2023, then-Branch Manager Vanessa Cintron hired Plaintiff as a Relationship Banker at Chase's Chrysler Branch in New York, NY.

11. On or about March 31, 2024, based on Plaintiff's exceptional performance, honesty, work ethic, and dedication to client service, Ms. Cintron promoted Plaintiff to Private Client Banker ("PCB").

12. Throughout FY2024 (YTD through September 2024), Plaintiff was the top-performing banker in the Chrysler Branch and ranked among the top performers in the entire market, averaging approximately 4,000 to 7,000 PVCs per month as a first-year banker with a clean record and zero disciplinary history.

13. On or about July 13, 2024, client Rhona Gilbert visited the Chrysler Branch to deposit proceeds from a home sale. Ms. Gilbert requested to open a new savings account to "start fresh," despite Plaintiff informing her that an existing savings account was on file.

14. Because Plaintiff was a first-year banker who had not encountered this specific request, he immediately escalated the matter to Branch Manager Cristian ("Cris") Merette (non-Asian).

15. Mr. Merette explicitly instructed Plaintiff that opening a new savings account and closing the old one was acceptable and permitted under branch practice.

16. Relying on Mr. Merette's explicit authorization, Plaintiff confirmed the client's preference. Ms. Gilbert e-signed all account-opening paperwork, and Plaintiff documented in the

bank's internal system ("Client Central") that the client specifically requested a new account.

17. Mr. Merette personally performed a supervisor override at the teller station for the associated deposit, demonstrating his real-time authorization and full awareness of the transaction.

18. In mid-July 2024, when another banker, Robert Grispon, raised a question regarding PVC allocation for the account, Plaintiff immediately agreed to relinquish the credit in full. Plaintiff received no payout, commission, or economic benefit whatsoever from the transaction.

19. On or about September 11, 2024, nearly two months after the transaction, Rory O'Connor (Caucasian) of Chase Global Security conducted a single, 10-minute phone call with Plaintiff mid-shift while Plaintiff was actively serving clients.

20. Plaintiff was given no advance notice, no documentation to refresh his recollection, no explanation of the process, and no follow-up interview.

21. Conversely, Branch Manager Cristian Merette received advance notice and a private, context-informed interview, affording him time to prepare his statements to Global Security.

22. In an effort to conceal his own role in approving the transaction, Mr. Merette failed to disclose his explicit authorization and supervisory override to investigators.

23. Between September 12 and September 19, 2024, Plaintiff repeatedly raised concerns to Mr. Merette and PCA Matthew Murer regarding the unfair process, requested access to documents, and complained about being subjected to unequal standards. Mr. Merette

dismissed Plaintiff's complaints, stating, "It is out of my hands" and "Just service the clients."

24. On September 19, 2024, within days of Plaintiff opposing the unfair investigation, Defendant terminated Plaintiff's employment, citing alleged "PVC manipulation."

25. At all relevant times during June through September 2024, Plaintiff was the only Asian employee assigned to and working at the Chrysler Branch.

26. The entire decision-making, investigative, and approval chain regarding Plaintiff's termination consisted exclusively of non-Asian personnel: Rory O'Connor (Global Security), Cristian Merette (Branch Manager), Natalie Modica (Market Director), Jeffrey Papa (Managing Director), and Tabatha Ferruggia (HR).

27. Non-Asian employees in the same market engaged in severe misconduct in clear violation of Chase policy, including opening/closing CDs without client consent, credit card signature forgery, and creating fraudulent business documentation to inflate PVCs, yet were not terminated and remain employed.

28. Additionally, a non-Asian manager who locked a teller in a branch vault and subjected her to severe harassment was not terminated or subjected to adverse employment action.

29. Defendant's sudden departure from progressive discipline policies, failure to review contemporaneous e-signature and override records, and disparate treatment of Plaintiff demonstrate that Defendant's stated reason for termination was a pretext for racial and national origin discrimination.

## COUNT I
## UNLAWFUL DISCRIMINATION / DISPARATE TREATMENT
## TITLE VII OF THE CIIVL RIGHT ACT OF 1964, NYSHRL, AND NYCHRL)

30. Plaintiff realleges and incorporates by reference each paragraph 1 through 29 above as if fully set forth herein.

31. Plaintiff is a member of a protected class based on his Asian race, Chinese ethnicity, and national origin.

32. Plaintiff was fully qualified for his position and performed his job duties at an exemplary level.

33. Plaintiff suffered an adverse employment action when Defendant terminated his employment on September 19, 2024.

34. The circumstances surrounding Plaintiff's termination including the disparate treatment of non-Asian comparators, an entirely non-Asian decision-making chain, procedural deviations, and shifting explanations, give rise to a strong inference of unlawful discrimination.

35. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered and continues to suffer loss of earnings, loss of benefits, career damage, severe emotional distress, mental anguish, and humiliation.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant for declaratory relief; compensatory, punitive, and liquidated damages; back pay, front pay, and lost benefits; pre- and post-judgment interest; reasonable attorneys' fees and costs; and such other relief as the Court deems just and proper.

## COUNT II
## RETALIATION
## (TITLE VII of the Civil Right Act of 1964, NYSHRL, AND NYCHRL)

36. Plaintiff realleges and incorporates by reference each paragraph above 1 through 29 as if fully set forth herein.

37. Between September 12 and September 19, 2024, Plaintiff engaged in protected activity by objecting to management regarding the unfair and disparate investigative process and demanding a fair opportunity to clear his name.

38. Defendant was fully aware of Plaintiff's protected complaints.

39. Plaintiff specifically complained about unlawful employment practices that violated both Title VII and State of New York Labor Laws.

40. Shortly after Plaintiff engaged in protected activity, Defendant subjected Plaintiff to an adverse employment action by terminating his employment on September 19, 2024.

41. A direct causal connection exists between Plaintiff's protected activity and his termination, as evidenced by the extreme temporal proximity, procedural irregularities, and pretextual justifications.

42. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered and continues to suffer economic loss, career disruption, emotional distress, and mental anguish.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant for declaratory relief; compensatory, punitive, and liquidated damages; back pay, front pay, and lost benefits; pre- and post-judgment interest; reasonable attorneys' fees and costs; and such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

**MICHAEL A. PIZZI, JR., ESQ.**
***Attorney for the Plaintiff***
Florida Bar No 079545
6625 Miami Lakes Drive, Suite 316
Miami Lakes, Florida, 33014
Phone:(786) 594-3948
E-mail: mpizzi@pizzilaw.com

By: */s/ Michael A. Pizzi, Jr.*
**MICHAEL A. PIZZI, JR. ESQ.**